STEVE W. BERMAN, WSBA No. 12536
KARL P. BARTH, WSBA No. 22780
TYLER WEAVER, WSBA #29413
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
(206) 623-7292

[Additional Counsel Listed on Signature Block]

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
AT SPOKANE

| | |
|---|---|
| BILL COADY, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>ITRON, INC., MALCOLM UNSWORTH, and STEVEN M. HELMBRECHT,<br><br>      Defendants. | No. CV-11-077-RMP<br><br>CLASS ACTION<br><br>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>DEMAND FOR JURY TRIAL |

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 1



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

000700-00  427079 V1

1
2

# TABLE OF CONTENTS

3

**Page**

4
5    I.    NATURE OF THE ACTION AND OVERVIEW ..........................................4
6    II.   JURISDICTION AND VENUE .................................................................6
7    III.  PARTIES ..................................................................................................6
8    IV.   SUBSTANTIVE ALLEGATIONS ...........................................................8
9          A.    Background ...................................................................................8
10
11         B.    Materially False and Misleading Statements Issued During the
                 Class Period ..................................................................................8
12         C.    Disclosures at the End of the Class Period....................................29
13
14   V.    ITRON'S VIOLATION OF GAAP RULES IN ITS FINANCIAL
           STATEMENTS FILED WITH THE SEC ....................................................31
15   VI.   CLASS ACTION ALLEGATIONS ..........................................................34
16   VII.  UNDISCLOSED ADVERSE FACTS ........................................................36
17   VIII. LOSS CAUSATION ................................................................................37
18
19   IX.   SCIENTER ALLEGATIONS ...................................................................37
20   X.    APPLICABILITY OF PRESUMPTION OF RELIANCE
           (FRAUD-ON-THE-MARKET DOCTRINE) ...............................................38
21   XI.   NO SAFE HARBOR ................................................................................40
22
23   COUNT I  VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT
            AND RULE 10B-5 PROMULGATED THEREUNDER AGAINST ALL
24          DEFENDANTS ........................................................................................41
25   COUNT II  VIOLATION OF SECTION 20(A) OF THE EXCHANGE ACT
            AGAINST THE INDIVIDUAL DEFENDANTS.........................................45
26

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 2

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

000700-00  427079 V1

1

PRAYER FOR RELIEF ...........................................................................46

JURY TRIAL DEMANDED ...................................................................47

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 3



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

000700-00  427079 V1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Plaintiff Bill Coady ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation:  (a) review and analysis of regulatory filings made by Itron, Inc. ("Itron" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Itron's; and (c) review of other publicly available information concerning Itron.

## I.    NATURE OF THE ACTION AND OVERVIEW

1.    This is a federal class action on behalf of purchasers of Itron's securities between April 28, 2010 and February 16, 2011, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.    Itron provides products and services for the energy and water markets worldwide.  It produces electricity, gas, water, and heat meters; and various other associated metering products for residential, commercial and industrial, and transmission and distribution customers.

3.    On February 16, 2011, Itron announced that it was restating its financial results for the quarters that had ended on March 31, June 30, and September 30, 2010.  According to the Company, Itron had made these revisions because the Company had improperly recognized revenue on a contract due to an

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 4



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    extended warranty obligation.  Further, the Company's restatement of its financial
2    results reduced total revenue for the first nine months of 2010 by $6.1 million and
3    both Generally Accepted Accounting Principles ("GAAP") and non-GAAP diluted
4    EPS were reduced by 11 cents over this same time period.
5
6        4.    On this news, shares of Itron declined $6.33 per share, 9.95%, to close
7    on February 17, 2011, at $57.29 per share, on unusually heavy volume.
8        5.    Throughout the Class Period, Defendants made false and/or
9    misleading statements, as well as failed to disclose material adverse facts about the
10   Company's business, operations, and prospects.  Specifically, Defendants made
11   false and/or misleading statements and/or failed to disclose:  (1) that the Company
12   improperly recognized revenue on a contract due to an extended warranty
13   obligation; (2) that, as a result, the Company's revenue and financial results were
14   overstated during the Class Period; (3) that the Company's financial results were
15   not prepared in accordance with GAAP; (4) that the Company lacked adequate
16   internal and financial controls; and (5) that, as a result of the above, the Company's
17   financial statements were materially false and misleading at all relevant times.
18
19       6.    As a result of Defendants' wrongful acts and omissions, and the
20   precipitous decline in the market value of the Company's securities, Plaintiff and
21   other Class members have suffered significant losses and damages.
22
23
24
25
26

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 5



1918 Eighth Avenue, Suite 3300 • Seattle, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1

## II.    JURISDICTION AND VENUE

2

7.    The claims asserted herein arise under Sections 10(b) and 20(a) of the

3

4

Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated

5

thereunder by the SEC (17 C.F.R. §  240.10b-5).

6

8.    This Court has jurisdiction over the subject matter of this action

7

pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C.

8

§ 78aa).

9

9.    Venue is proper in this Judicial District pursuant to 28 U.S.C. §

10

1391(b), § 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in

11

furtherance of the alleged fraud or the effects of the fraud have occurred in this

12

13

Judicial District.  Many of the acts charged herein, including the preparation and

14

dissemination of materially false and/or misleading information, occurred in

15

substantial part in this District. Additionally, Itron maintains its principal executive

16

offices within this Judicial District.

17

10.    In connection with the acts, transactions, and conduct alleged herein,

18

Defendants directly and indirectly used the means and instrumentalities of

19

20

interstate commerce, including the United States mail, interstate telephone

21

communications, and the facilities of a national securities exchange.

22

## III.    PARTIES

23

11.    Plaintiff Bill Coady, as set forth in the accompanying certification,

24

incorporated by reference herein, purchased Itron common stock during the Class

25

26

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 6



Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.    Defendant Itron is a Washington corporation with its principal executive offices located at 2111 N Molter Road, Liberty Lake, Washington 99019.

13.    Defendant Malcolm Unsworth ("Unsworth") was, at all relevant times, Chief Executive Officer ("CEO") and a director of Itron.

14.    Defendant Steven M. Helmbrecht ("Helmbrecht") was, at all relevant times, Chief Financial Officer ("CFO") and Senior Vice President of Itron.

15.    Defendants Unsworth and Helmbrecht are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Itron's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 7



1918 Eighth Avenue, Suite 3300 • Seattle, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## IV.    SUBSTANTIVE ALLEGATIONS

**A.    Background**

16.    Itron provides products and services for the energy and water markets worldwide. It produces electricity, gas, water, and heat meters; and various other associated metering products for residential, commercial and industrial, and transmission and distribution customers.

**B.    Materially False and Misleading Statements Issued During the Class Period**

17.    The Class Period begins on April 28, 2010. On this day, Itron issued a press release entitled, "Itron Announces First Quarter Financial Results." Therein, the Company, in relevant part, stated:

> LIBERTY LAKE, Wash., Apr 28, 2010 (BUSINESS WIRE) -- Itron, Inc. (NASDAQ:ITRI) today reported financial results for its first quarter ended March 31, 2010. Highlights of the quarter include:
>
> * Quarterly revenues of $499 million with record North America revenues of $243 million;
>
> * Quarterly non-GAAP diluted EPS of $1.01 (inclusive of $0.26 of discrete tax benefits);
>
> * Record cash flow from operations and free cash flow of $66 million and $50 million;
>
> * Quarterly adjusted EBITDA of $66 million; and

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 8



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

000700-00  427079 V1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

\* Record twelve-month backlog of $981 million; total backlog of $1.5 billion.

"The positive momentum that started in North America in the fourth quarter of last year continues to accelerate and broaden," said Malcolm Unsworth, president and CEO. "We shipped over 1 million OpenWay meters and modules during the quarter which is equivalent to the total shipped all of last year, and we are seeing strong demand for our gas and water solutions."

Operations Highlights:

Revenues – Total revenues of $499 million for the first quarter of 2010 were $111 million, or 29%, higher than 2009 first quarter revenues of $389 million. North America revenues of $243 million for the first quarter of 2010 were $104 million, or 74%, higher than the comparable 2009 period revenues of $139 million. The increase in revenue was primarily driven by higher shipments of OpenWay meters and modules. International revenues of $256 million for the first quarter of 2010 were $7 million, or 3%, higher than the comparable 2009 period revenues of $249 million. The increase in International revenues was due to foreign exchange rates which was somewhat offset by a decrease from soft demand and economic conditions in certain markets.

Gross Margin – Gross margin for the first quarter of 2010 was 32% compared with 33% in the first quarter of 2009. First quarter 2010 North America gross margin of 33% was lower than the 2009 gross margin of 38%. The decline in margin in North America was primarily due to increased shipments of our higher cost first generation OpenWay meters and increased service revenues, which have lower margin. In addition, compensation costs were higher due to reinstating annual incentive plans in 2010. International gross margin was 31% for the first quarter of 2010 and 2009.

Operating Expenses – Total operating expenses for the first quarter of 2010 were $125 million compared with $121 million

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 9



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

in the same period of 2009.  North America operating expenses were $46 million compared with $44 million in the same period of 2009.  The increase in North America operating expenses was primarily due to expenses in the current period associated with the reinstatement of annual incentive compensation plans in 2010.  This expense was somewhat offset by decreased amortization of intangibles expense.  International operating expenses were $68 million in the first quarter of both 2010 and 2009.  Increases in International operating expenses in the 2010 period from foreign exchange rates were offset by decreased amortization of intangibles expense.  Corporate unallocated expenses of $11 million for the first quarter of 2010 were $2 million higher than the first quarter of 2009 primarily due to higher compensation expense.

Net Interest Expense – Net interest expense of $15 million in the first quarter of 2010 compared with $16 million in the same period of 2009.  Amortization of debt placement fees, which is included in net interest expense, was $1.2 million and $1.8 million in the first quarter of 2010 and 2009, respectively.  Amortization of debt placement fees varies depending on the amount of debt repayments made in a given period.  During the first quarter of 2010, we made approximately $53 million in debt repayments.

Loss on Extinguishment of Debt – The first quarter of 2009 included a $10.3 million net loss on the extinguishment of debt related to a convertible debt for common stock exchange.  The difference in the value of the shares of Itron's common stock issued under the exchange agreement and the value of the shares used to derive the amount payable under the original conversion agreement resulted in the net loss on extinguishment of debt.

Other Expense – Other expense was $592,000 in the first quarter of 2010 compared with $2 million in 2009.  The decrease in the 2010 period was primarily due to the recognition of a foreign exchange gain, compared with a loss in the 2009 period, caused by fluctuations in exchange rates for

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 10



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1
2
3

material purchases and related product sales denominated in different currencies.  Additionally, the 2009 period included consulting and legal fees associated with an amendment to our senior debt agreement.

4
5
6
7
8

GAAP Income Taxes – We had a tax benefit of $8.7 million in the first quarter of 2010 compared with a minimal benefit in the same period of 2009.  The first quarter 2010 tax benefit is due primarily to the receipt of a clean energy manufacturing tax credit awarded as part of the American Recovery and Reinvestment Act and a benefit related to the reduction of tax reserves for certain foreign subsidiaries.

9
10
11

GAAP Net Income and Diluted EPS – Our GAAP net income and diluted EPS for the first quarter of 2010 was $26.8 million, or 66 cents per share, compared with a net loss of $19.7 million, or 55 cents per share, in the same period in 2009.

12
13
14
15
16
17

Non-GAAP Operating Income – Non-GAAP operating income, which excludes amortization expense related to intangible assets, was $51 million, or 10.3% of revenues, in the first quarter of 2010, compared with $32 million, or 8.3% of revenues, in the same period in 2009.  The increased operating income was primarily due to increased contribution from North America.

18
19
20
21
22

Non-GAAP Income Taxes – We had a non-GAAP tax benefit of 4% in the first quarter of 2010 compared with an expense of 32% in the same period of 2009.  The non-GAAP tax benefit in 2010 is due primarily to the receipt of a clean energy manufacturing tax credit awarded as part of the American Recovery and Reinvestment Act and a benefit related to the reduction of tax reserves for certain foreign subsidiaries.

23
24
25
26

Non-GAAP Net Income and Diluted EPS – Non-GAAP net income, which excludes amortization expenses related to intangibles assets, amortization of debt placement fees, the amortization of convertible debt discount, and the non-cash net loss associated with the convertible debt for stock exchange,

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 11



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

000700-00  427079 V1

was $41.3 million in the first quarter of 2010, compared with
$12.2 million in the 2009 period.  Non-GAAP diluted EPS was
$1.01 in the first quarter 2010 compared with 33 cents in the
2009 period.  Fully diluted shares outstanding in the first
quarter of 2010 were 4.3 million shares higher than the same
period in 2009 primarily due to the convertible debt for stock
exchange in the first quarter of 2009 and the equity offering in
the second quarter of 2009.

Concluded Unsworth, "Global interest in advanced metering
applications, not only for electric but also for gas and water
utilities, continues to be high.  Itron is well positioned to take
advantage of the momentum worldwide due to our global
footprint and leading market positions."

Other Financial Highlights:

Backlog and New Order Bookings – Total backlog was $1.5
billion at March 31, 2010 compared with $1.5 billion at
March 31, 2009.  Twelve month backlog of $981 million at
March 31, 2010 was higher than the $471 million at March 31,
2009 due to the inclusion of a substantial amount of OpenWay
contract shipments in the current twelve month backlog.  New
order bookings for the first quarter of 2010 were $481 million,
compared with $625 million in the first quarter of 2009.  New
order bookings in the first quarter of 2009 included $260
million related to our OpenWay contract with San Diego Gas
and Electric while the first quarter of 2010 did not include any
significant OpenWay contract bookings.  Our book-to-bill
ratios were .96 to 1 and 1.6 to 1 for the first quarter of 2010 and
2009, respectively.

Cash Flows from Operations and Financial Condition – Net
cash provided by operating activities during the first quarter
2010 was $66 million, compared with $43 million in the same
period in 2009.  Adjusted earnings before interest, taxes,
depreciation, and amortization (adjusted EBITDA) in the first
quarter of 2010 was $66 million compared with $43 million for
the same period in 2009.  Free cash flow for the first quarter of

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 12



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

2010 was $50 million compared with $29 million for the same period in 2009.  Cash and equivalents were $123 million at March 31, 2010 compared with $122 million at December 31, 2009.

18.    On May 5, 2010, Itron filed its Quarterly Report with the SEC on Form 10-Q for the 2010 fiscal first quarter.  The Company's Form 10-Q was signed by Defendant Helmbrecht and reaffirmed the Company's financial results previously announced on April 28, 2010.  The Company's Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants Unsworth and Helmbrecht, who certified:

1.    I have reviewed this Quarterly Report on Form 10-Q of Itron, Inc.;

2.    Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.    Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.    The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 13



(a)    Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b)    Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c)    Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d)    Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 14



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

5.    The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a)    All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b)    Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

19.    On July 28, 2010, Itron issued a press release entitled, "Itron Announces Second Quarter Financial Results." Therein, the Company, in relevant part, stated:

LIBERTY LAKE, Wash., Jul 28, 2010 (BUSINESS WIRE) -- Itron, Inc. (NASDAQ:ITRI) today reported financial results for its second quarter and six months ended June 30, 2010. Highlights include:

* Record quarterly and six month revenues of $569 million and $1.1 billion;

* Quarterly and six month non-GAAP diluted EPS of 98 cents and $1.99;

* Six month cash flow from operations and free cash flow of $117 million and $89 million;

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 15



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

* Quarterly and six month adjusted EBITDA of $84 and $150 million;

* Record twelve-month backlog of $1.0 billion and total backlog of $1.7 billion; and

* Quarterly bookings of $806 million.

"We are having a fantastic year with record financial results, strong bookings and record backlog," said Malcolm Unsworth, president and CEO. "This performance underscores the strength of Itron's portfolio of products and solutions – the broadest in the industry. At the same time, there were some disappointments with recent contract awards in North America. As we look forward, we are actively pursuing a variety of activities to enhance our competitive position in these areas."

Operations Highlights:

Revenues:

Total Company – Total revenues of $569 million for the second quarter of 2010 and $1.1 billion for the first six months of 2010 were 38% and 33% higher than respective 2009 revenues of $414 and $802 million.

North America – Revenues of $303 million for the second quarter and $546 million for the first six months of 2010 were 112% and 94% higher than respective 2009 revenues of $143 million and $282 million. The increase in revenues in 2010 was primarily driven by higher shipments of OpenWay meters and modules. During the second quarter of 2010, we shipped 1.2 million OpenWay units.

International – Revenues of $266 million for the second quarter of 2010 were $5 million, or 2%, lower than the comparable 2009 period revenues of $271 million. The decrease in revenues was due to foreign exchange rates. Revenues of $522 million for the first half of 2010 were $3 million higher than the same period in 2009 due to favorable foreign exchange rates

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 16



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

000700-00  427079 V1

modestly offset by a slowdown due to economic conditions in certain markets.

Gross Margins:

Total Company – Gross margins of 31.0% for the second quarter and 31.4% for the first six months of 2010 were lower than 2009 gross margins of 32.2% and 32.7%.

North America – Gross margins of 34.0% for the quarter and 33.5% for the six months of 2010 were lower than the 2009 gross margins of 34.9% and 36.2%. The decline in gross margins was primarily due to increased shipments of our higher cost first generation OpenWay meters and increased service revenues, which have lower margin. In addition, compensation costs were higher due to reinstating annual incentive plans in 2010.

International – Gross margins of 27.5% for the quarter and 29.1% for the first six months of 2010 were lower than 2009 gross margins of 30.7% and 30.9%. The decrease in margins was due to increased warranty expense.

Operating Expenses:

Total Company – Operating expenses of $124 million for the second quarter and $249 million for the first six months of 2010 were slightly higher than the 2009 periods of $121 million and $242 million.

North America – Operating expenses were $46 million for the second quarter and $92 million for the first six months of 2010 compared with $44 million and $89 million for the same periods of 2009. The increase in operating expenses was primarily due to expenses in the current period associated with the reinstatement of annual incentive compensation plans in 2010 and higher sales and marketing expense. These increases were somewhat offset by decreased amortization of intangibles expense.

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 17



000700-00  427079 V1

International – Operating expenses for the second quarter 2010 of $68 million were $2 million lower than $70 million in the second quarter 2009.  The decrease was due to foreign exchange rates and lower amortization of intangibles, partially offset by higher sales and marketing and general administrative costs.  Operating expenses for the first six months of 2010 were $137 million compared with $138 million for the same period of 2009.  Decreases in operating expenses were due to decreased amortization of intangibles expense partially offset by increases from foreign exchange rates and higher sales and marketing and general administrative expenses.

Corporate Unallocated – Corporate unallocated expenses were $10 million for the second quarter and $21 million for the first six months of 2010 compared with $7 million and $16 million in the same periods of 2009.  The increase in 2010 was primarily due to higher compensation expense.

Other Income/Expense:

Net Interest Expense – Net interest expense of $14 million for the second quarter and $29 million for the first six months of 2010 compared with $16 million and $32 million for the same periods of 2009.  Amortization of debt placement fees, which is included in net interest expense, was $1.5 million for the second quarter and $2.7 million for the first six months of 2010 compared with $374,000 and $2.2 million in the respective 2009 periods.  Amortization of debt placement fees varies depending on the amount of debt repayments made in a given period.  During the first half of 2010, we made approximately $74 million in debt repayments compared with $70 million in the same period of 2009.

Loss on Extinguishment of Debt – The first six months of 2009 included a $10.3 million net loss on the extinguishment of debt related to a convertible debt for common stock exchange.  The difference in the value of the shares of Itron's common stock issued under the exchange agreement and the value of the shares used to derive the amount payable under the original

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 18



conversion agreement resulted in the net loss on extinguishment of debt.

Other Income/Expense – Other expense was $425,000 in the second quarter of 2010 compared with $2.9 million in 2009. Other expense for the first six months of 2010 was $1.0 million compared with $4.9 million in the 2009 period. The 2010 periods include a foreign exchange gain, compared with a loss in the 2009 periods, caused by fluctuations in exchange rates for material purchases and related product sales denominated in different currencies. Additionally, the 2009 periods included consulting and legal fees associated with an amendment to our senior debt agreement.

GAAP Measures:

GAAP Income Taxes – We had a tax expense of $11.1 million in the second quarter of 2010 compared with a benefit of $22.4 million in the second quarter of 2009. For the first six months of 2010, we had a tax expense of $2.4 million compared with a benefit of $22.4 million in the same period of 2009. The tax provision reflected in the first six months of 2010 is derived from our estimated tax rate for the full year.

GAAP Net Income and Diluted EPS – Our GAAP net income and diluted EPS for the second quarter and first six months of 2010 was $26.9 million, or 65 cents per share, and $53.7 million, or $1.31 per share. This compares with net income of $15.3 million, or 40 cents per share, and a net loss of $4.4 million, or 12 cents in the same periods in 2009. The increase in 2010 net income was primarily due to higher operating income in our North America segment.

Non-GAAP Measures:

Non-GAAP Operating Income – Non-GAAP operating income, which excludes amortization expense related to intangible assets, was $69 million, or 12.1% of revenues, in the second quarter and $120 million, or 11.3% of revenues, for the first six

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 19



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

months of 2010.  This compares with $36 million, or 8.7% of revenues, and $68.3 million, or 8.5% of revenues, in the second quarter and first six months of 2009.  The increased operating income was primarily due to increased contribution from North America.

Non-GAAP Income Taxes – We had a non-GAAP tax rate of 31.1% in the second quarter and 16.8% for the first six months of 2010 compared with 6.3% and 18.7% in the same periods of 2009.  The tax provision reflected in the first six months of 2010 is derived from our estimated non-GAAP tax rate for the full year.

Non-GAAP Net Income and Diluted EPS – Non-GAAP net income, which excludes amortization expenses related to intangible assets, amortization of debt placement fees, the amortization of convertible debt discount, and the non-cash net loss associated with the convertible debt for stock exchange, was $40.4 million in the second quarter and $81.7 million for the first six months of 2010.  This compares with $18.6 million and $30.8 million in the 2009 periods.  Non-GAAP diluted EPS was 98 cents and $1.99 in the second quarter and first six months of 2010 compared with 49 cents and 82 cents in the same periods of 2009.  Fully diluted shares outstanding were 3.0 million and 3.7 million shares higher than the same periods in 2009 primarily due to the convertible debt for stock exchange in the first quarter of 2009 and the equity offering in the second quarter of 2009.

Other Financial Highlights:

Backlog and New Order Bookings: Total backlog was $1.7 billion at June 30, 2010 compared with $1.6 billion at June 30, 2009.  Twelve month backlog of $1.0 billion at June 30, 2010 was higher than the $646 million at June 30, 2009 due to the inclusion of a substantial amount of OpenWay contract shipments in the current twelve month backlog.  New order bookings for the second quarter of 2010 were $806 million, compared with $427 million in the second quarter of 2009.

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 20



New order bookings in the second quarter of 2010 included $339 million related to our OpenWay contract with Detroit Edison while the second quarter of 2009 did not include any significant OpenWay contract bookings.  Our book-to-bill ratios were 1.4 to 1 and 1.0 to 1 for the second quarter of 2010 and 2009, respectively.

Cash Flows from Operations and Financial Condition:  Net cash provided by operating activities during the first six months of 2010 was $117 million, compared with $67 million in the same period in 2009.  Adjusted earnings before interest, taxes, depreciation, amortization and the non-cash net loss on the extinguishment of debt (adjusted EBITDA) in the second quarter of 2010 was $84 million compared with $47 million for the same period in 2009.  Adjusted EBITDA for the first six months of 2010 was $150 million compared with $90 million in the first six months of 2009.  Free cash flow for the first six months of 2010 was $89 million compared with $40 million in the same period in 2009.  Cash and equivalents were $137 million at June 30, 2010 compared with $122 million at December 31, 2009.

20.    On August 4, 2010, Itron filed its Quarterly Report with the SEC on Form 10-Q for the 2010 fiscal second quarter.  The Company's Form 10-Q was signed by Defendant Helmbrecht and reaffirmed the Company's financial results previously announced on July 28, 2010.  The Company's Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants Unsworth and Helmbrecht, substantially similar to the certifications contained in ¶ 18, *supra*.

21.    On October 27, 2010, Itron issued a press release entitled, "Itron Announces Record Quarterly Financial Results."  Therein, the Company, in relevant part, stated:

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 21



LIBERTY LAKE, Wash., Oct 27, 2010 (BUSINESS WIRE) --
Itron, Inc. (NASDAQ:ITRI) today reported financial results for
its third quarter and nine months ended September 30, 2010.
Highlights include:

* Record quarterly and nine month revenues of $576 million
and $1.6 billion;

* Record quarterly and nine month non-GAAP diluted EPS of
$1.06 and $3.06;

* Record nine month cash flow from operations and free cash
flow of $167.1 million and $121.6 million;

* Record quarterly and nine month adjusted EBITDA of $89
million and $239 million;

* Twelve-month backlog of $958 million and total backlog of
$1.7 billion; and

* Quarterly bookings of $528 million.

"Our growth this quarter has been driven by our smart solutions
for electric, gas and water utilities.  Itron's investments and
innovation are paying off with outstanding results," said
Malcolm Unsworth, president and CEO.  "Our global backlog
remains robust thanks to our balanced portfolio of products.
We are excited about the potential for additional projects in
North America and very pleased to see the continued
momentum in Europe and other parts of the world towards the
adoption of smart technologies."

Operations Highlights:

Revenues:

Total Company – Total revenues of $576 million for the third
quarter of 2010 and $1.6 billion for the first nine months of
2010 were 41% and 36% higher than respective 2009 revenues
of $408 million and $1.2 billion.

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 22



North America – Revenues of $315 million for the third quarter and $862 million for the first nine months of 2010 were 130% and 105% higher than respective 2009 revenues of $137 million and $420 million. The increase in revenues in 2010 was primarily driven by higher shipments of smart meters and modules. During the third quarter of 2010, we shipped 1.3 million OpenWay units.

International – Revenues of $261 million for the third quarter of 2010 were $10 million, or 4%, lower than the comparable 2009 period revenues of $271 million. Although meter volumes were higher, revenues were lower due to changes in foreign exchange rates. Revenues of $783 million for the first nine months of 2010 were $8 million lower than the same period in 2009 with lower volumes due to economic conditions in certain markets.

Gross Margins:

Total Company – Gross margins of 32.0% for the third quarter and 31.6% for the first nine months of 2010 were comparable to 2009 gross margins of 31.7% and 32.4%.

North America – The gross margin of 35.5% for the quarter was higher than the 31.0% gross margin in the third quarter of 2009. The increase was due to manufacturing efficiency improvements resulting from higher volumes and cost reduction efforts. The gross margin for the first nine months of 2010 was 34.2% compared to 34.5% in the same period in 2009. An increase in compensation costs due to reinstating annual incentive plans in 2010 was offset by manufacturing efficiency improvements due to higher volumes and cost reduction efforts.

International – Gross margins of 27.8% for the quarter and 28.7% for the first nine months of 2010 were lower than 2009 gross margins of 32.1% and 31.3%. The decrease in margins was due primarily to increased warranty, facility consolidation and material costs.

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 23



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

Operating Expenses:

Total Company – Operating expenses of $123 million for the third quarter and $372 million for the first nine months of 2010 were higher than the 2009 periods of $120 million and $362 million.

North America – Operating expenses were $47 million for the third quarter and $139 million for the first nine months of 2010 compared with $44 million and $132 million for the same periods of 2009.  The increase in operating expenses was primarily due to expenses in the current period associated with the reinstatement of annual incentive compensation plans in 2010 and higher sales and marketing and product development expenses.  These increases were partially offset by a scheduled decrease in amortization of intangibles expense.

International – Operating expenses for the third quarter 2010 of $65 million were $5 million lower than $70 million in the third quarter of 2009.  The decrease was due to foreign exchange rates and lower amortization of intangibles, partially offset by increases in other operating expenses.  Operating expenses for the first nine months of 2010 were $201 million compared with $207 million for the same period of 2009.  Decreases in operating expenses were due to decreased amortization of intangibles expense partially offset by increases in other operating expenses.

Corporate Unallocated – Corporate unallocated expenses were $11 million for the third quarter and $32 million for the first nine months of 2010 compared with $7 million and $23 million in the same periods of 2009.  The increase in 2010 was primarily due to higher compensation expense.

Other Income/Expense:

Net Interest Expense – Net interest expense of $13 million for the third quarter and $42 million for the first nine months of 2010 compared with $20 million and $53 million for the same

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 24



periods of 2009.  Amortization of debt placement fees, which is included in net interest expense, was $1.4 million for the third quarter and $4.1 million for the first nine months of 2010 compared with $4.1 million and $6.2 million in the respective 2009 periods.  Amortization of debt placement fees varies depending on the amount of debt repayments made in a given period.  During the first nine months of 2010, we made approximately $107 million in debt repayments compared with $236 million in the same period of 2009.

Loss on Extinguishment of Debt – The results for the first nine months of 2009 included a $12.8 million net loss on the extinguishment of debt related to a convertible debt for common stock exchange.  The difference in the value of the shares of Itron's common stock issued under the exchange agreement and the value of the shares used to derive the amount payable under the original conversion agreement resulted in the net loss on extinguishment of debt.

Other Income/Expense – Other expense was $4.4 million in the third quarter of 2010 compared with $4.5 million in 2009. Other expense for the first nine months of 2010 was $5.4 million compared with $9.4 million in the 2009 period.  The 2010 periods included lower foreign exchange losses than the 2009 periods.  The foreign exchange losses were caused by fluctuations in exchange rates for material purchases and related product sales denominated in different currencies. Additionally, the 2009 periods included consulting and legal fees associated with an amendment to our senior debt agreement.

GAAP Measures:

GAAP Income Taxes – We had a tax expense of $14.7 million in the third quarter of 2010 compared with a benefit of $15.1 million in the third quarter of 2009.  For the first nine months of 2010, we had a tax expense of $17.1 million compared with a benefit of $37.5 million in the same period of 2009.  The 2010 year-to-date tax expense includes an $8.7 million tax benefit

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 25



000700-00  427079 V1

recorded in the first quarter which was due primarily to the receipt of a clean energy manufacturing tax credit and the reduction of tax reserves for certain foreign subsidiaries. The tax provision reflected in the first nine months of 2010 is derived from our estimated tax rate for the full year.

GAAP Net Income and Diluted EPS – Our GAAP net income and diluted EPS for the third quarter and first nine months of 2010 were $29.1 million, or 71 cents per share, and $82.8 million, or $2.02 per share. This compares with net losses of $3.0 million, or 7 cents per share, and $7.4 million, or 19 cents per share in the same periods in 2009. The increase in 2010 net income was primarily due to higher operating income in our North America segment.

Non-GAAP Measures:

Non-GAAP Operating Income – Non-GAAP operating income, which excludes amortization expense related to intangible assets, was $78.3 million, or 13.6% of revenues, in the third quarter and $198.6 million, or 12.1% of revenues, for the first nine months of 2010. This compares with $34.1 million, or 8.4% of revenues, and $102.5 million, or 8.5% of revenues, in the third quarter and first nine months of 2009. The increased operating income was primarily due to increased contribution from North America.

Non-GAAP Income Taxes – We had a non-GAAP tax rate of 32.7% for the third quarter and a rate of 23.2% for the first nine months of 2010. The rate for the first nine months includes the effect of a 4% tax benefit recorded in the first quarter of 2010 due primarily to the receipt of a clean energy manufacturing tax credit and the reduction of tax reserves for certain foreign subsidiaries. We had a non-GAAP tax benefit in the third quarter of 2009 and our year-to-date 2009 non-GAAP tax rate was 4.5%. The tax provision reflected in the first nine months of 2010 is derived from our estimated non-GAAP tax rate for the full year.

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 26



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

Non-GAAP Net Income and Diluted EPS – Non-GAAP net income, which excludes amortization expenses related to intangible assets, amortization of debt placement fees, the amortization of convertible debt discount, and the non-cash net loss associated with the convertible debt for stock exchange, was $43.5 million in the third quarter and $125.2 million for the first nine months of 2010.  This compares with $18.2 million and $49.0 million in the 2009 periods.  Non-GAAP diluted EPS was $1.06 and $3.06 in the third quarter and first nine months of 2010 compared with 45 cents and $1.28 in the same periods of 2009.  Fully diluted shares outstanding for the first nine months of 2010 were 2.6 million shares higher than the same period in 2009 primarily due to the convertible debt for stock exchange in the first quarter of 2009 and the equity offering in the second quarter of 2009.

Other Financial Highlights:

Backlog and New Order Bookings:  Total backlog was $1.7 billion at September 30, 2010 compared with $1.6 billion at September 30, 2009.  Twelve month backlog of $958 million at September 30, 2010 was higher than the $749 million at September 30, 2009.  New order bookings for the third quarter of 2010 were $528 million, compared with $400 million in the third quarter of 2009.  Our book-to-bill ratios were .92 to 1 and .98 to 1 for the third quarter of 2010 and 2009, respectively.

Cash Flows from Operations and Financial Condition:  Net cash provided by operating activities during the first nine months of 2010 was $167.1 million, compared with $87.1 million in the same period in 2009.  Adjusted earnings before interest, taxes, depreciation, amortization and the non-cash net loss on the extinguishment of debt (adjusted EBITDA) in the third quarter of 2010 was $89 million compared with $41 million for the same period in 2009.  Adjusted EBITDA for the first nine months of 2010 was $239 million compared with $131 million in the first nine months of 2009.  Free cash flow for the first nine months of 2010 was $121.6 million compared with $49.1 million in the same period in 2009.  Cash and equivalents were

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 27



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

$148 million at September 30, 2010 compared with $122 million at December 31, 2009. The $215.7 million outstanding balance on our convertible senior subordinated notes is included in current portion of long term debt as of September 30, 2010 due to the combination of put, call and conversion options occurring within the next 12 months.

22.    On November 2, 2010, Itron filed its Quarterly Report with the SEC on Form 10-Q for the 2010 fiscal third quarter. The Company's Form 10-Q was signed by Defendant Helmbrecht and reaffirmed the Company's financial results previously announced on October 27, 2010. The Company's Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants Unsworth and Helmbrecht, substantially similar to the certifications contained in ¶ 18, *supra*.

23.    The statements contained in ¶¶ 17-22, were materially false and/or misleading when made because defendants failed to disclose or indicate the following: (1) that the Company improperly recognized revenue on a contract due to an extended warranty obligation; (2) that, as a result, the Company's revenue and financial results were overstated during the Class Period; (3) that the Company's financial results were not prepared in accordance with GAAP; (4) that the Company lacked adequate internal and financial controls; and (5) that, as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 28



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1

**C.    Disclosures at the End of the Class Period**

2    24.    On February 16, 2011, Itron issued a press release entitled, "Itron

3 Announces Fourth Quarter and Fiscal 2010 Results."  Therein, the Company, in

4 relevant part, stated:

5

6    Record Full Year Revenue of $2.26 Billion

7    Record Full Year Non-GAAP Diluted EPS of $3.89

8    Restatement of Fiscal 2010 Quarterly Results to Reflect
   Revenue Deferral
9

10    LIBERTY LAKE, Wash.  -- (BUSINESS WIRE) -- Itron, Inc.
   (NASDAQ:ITRI) today reported financial results for its fourth
11    quarter and full year ended December 31, 2010.  Highlights
   include:
12

13    * Record quarterly and full year revenues of $620.7 million and
   $2.26 billion;
14

15    * Quarterly and record full year GAAP diluted EPS of 65 cents
   and $2.56, respectively;
16

17    * Quarterly non-GAAP diluted EPS of 95 cents;

18    * Record full year non-GAAP diluted EPS of $3.89;

19    * Non-GAAP tax rate for the quarter of 20.6% reflecting
   benefits from the retroactive extension of the U.S. research and
20    development tax credit passed in the fourth quarter and lower
   than forecasted income in higher tax jurisdictions;
21

22    * Twelve-month backlog of $913 million and total backlog of
   $1.6 billion; and
23

24    * Quarterly bookings of $581 million.

25    In addition, Itron announced that it has restated financial results
   for the quarters ended March 31, June 30, and September 30,
26

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 29



1918 Eighth Avenue, Suite 3300 • Seattle, WA 98101
(206) 623-7292 • FAX (206) 623-0594

2010 which will be set forth in its Annual Report on Form 10-K for the fiscal year ended December 31, 2010. These revisions were made primarily to defer revenue that had been incorrectly recognized on one contract due to a misinterpretation of an extended warranty obligation. The effect was to reduce revenue and earnings in each of the first three quarters of the year. For the first nine months of 2010, total revenue was reduced by $6.1 million and both GAAP and non-GAAP diluted EPS were reduced by 11 cents. All comparative information within this release is on a restated basis.

"Our record results for the year resulted from our continued commitment to technological innovation as well as our balanced and diversified portfolio of products and solutions for the electric, gas and water industries," said Malcolm Unsworth, president and CEO. "Our main objectives in 2010 were to successfully deploy our smart metering solutions for our large contracts in North America, prepare for developing opportunities in Europe and other regions of the world, and grow our gas and water businesses. We met those objectives and more and are positioned for continued growth in 2011."

Operations Highlights:

Revenues increased $143.8 million, or 30.2%, for the quarter and $571.8 million, or 33.9%, for the year compared to the same periods last year. The increase in revenues was primarily driven by higher shipments of smart meters and modules in North America. During the fourth quarter we shipped 1.4 million OpenWay units. The increase in fourth quarter revenue included an $11.5 million unfavorable effect from changes in foreign currency exchange rates. The unfavorable foreign exchange effect on revenues for the year was $5.3 million.

Gross margin for the quarter was 29.9% which was lower than the prior year fourth quarter margin of 30.5%. Both segments contributed to the decline from the prior year. Itron North America declined 130 basis points from fourth quarter 2009 primarily due to a higher mix of OpenWay revenue which,

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 30



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

000700-00  427079 V1

1
2
3
4
5
including installation services, currently has a lower margin than non-OpenWay revenue.  Itron International gross margin declined 120 basis points from fourth quarter 2009 primarily due to special charges.  International gross margins were also impacted by higher material costs which were offset by higher volumes and a more favorable product mix.

6
7
8
9
Operating expenses, excluding amortization of intangibles, were $124.1 million, or 20.0% of revenue, for the quarter compared to $104.1 million, or 21.8% of revenue, in the prior year.  The increase was due primarily to higher compensation expenses as well as research and development costs for new and enhanced products.

10
11
12
13
14
Net income and diluted EPS for the fourth quarter and year were $26.6 million, or 65 cents per share, and $104.8 million, or $2.56 per share.  This compares with net income of $5.2 million, or 13 cents per share, and a loss of $2.2 million, or 6 cents per share, in the same periods in 2009.  The increase in 2010 net income was primarily due to higher operating income in our North America segment.

15
16
        25.    On this news, shares of Itron declined $6.33 per share, 9.95%, to close on February 17, 2011, at $57.29 per share, on unusually heavy volume.

17
18
## V.    ITRON'S VIOLATION OF GAAP RULES IN ITS FINANCIAL STATEMENTS FILED WITH THE SEC

19
20
21
22
23
24
        26.    These financial statements and the statements about the Company's financial results were false and misleading, as such financial information was not prepared in conformity with GAAP, nor was the financial information a fair presentation of the Company's operations due to the Company's improper accounting for, and disclosure about its revenues, in violation of GAAP rules.

25
26

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 31



000700-00  427079 V1

27.     GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practice at a particular time.  Regulation S-X (17 C.F.R. § 210.4 01(a) (1)) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate.  Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosure which would be duplicative of disclosures accompanying annual financial statements.  17 C.F.R. § 210.10-01(a).

28.     The fact that Itron has restated its financial statements, and informed investors that these financial statements should not be relied upon is an admission that they were false and misleading when originally issued (APB No. 20, 7-13; SFAS No. 154, 25).

29.     Given these accounting irregularities, the Company announced financial results that were in violation of GAAP and the following principles:

(a)     The principle that "interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements" was violated (APB No. 28, 10);

(b)     The principle that "financial reporting should provide information that is useful to present to potential investors and creditors and other users in making rational investment, credit, and similar decisions" was violated (FASB Statement of Concepts No. 1, 34);

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 32



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

(c)    The principle that "financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and effects of transactions, events, and circumstances that change resources and claims to those resources" was violated (FASB Statement of Concepts No. 1, 40);

(d)    The principle that "financial reporting should provide information about an enterprise's financial performance during a period" was violated (FASB Statement of Concepts No. 1, 42);

(e)    The principle that "financial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to owners (stockholders) for the use of enterprise resources entrusted to it" was violated (FASB Statement of Concepts No. 1, 50);

(f)    The principle that "financial reporting should be reliable in that it represents what it purports to represent" was violated (FASB Statement of Concepts No. 2, 58-59);

(g)    The principle that "completeness, meaning that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions" was violated (FASB Statement of Concepts No. 2, 79); and

(h)    The principle that "conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business



COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 33



000700-00  427079 V1

situations are adequately considered" was violated (FASB Statement of Concepts No. 2, 95).

30.     The adverse information concealed by Defendants during the Class Period and detailed above was in violation of Item 303 of Regulation S-K under the federal securities law (17 C.F.R. § 229.303).

## VI.     CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased Itron's securities between April 28, 2010 and February 16, 2011, inclusive (the "Class Period") and who were damaged thereby.  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

32.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Itron's securities were actively traded on National Association of Securities Dealers Automated Quotations Market ("NASDAQ").  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Millions of Itron shares were traded publicly during the Class Period on the NASDAQ and as of September 30, 2010, Itron had 40,406,002

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 34



1918 Eighth Avenue, Suite 3300 • Seattle, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1  shares of common stock outstanding.  Record owners and other members of the
2  Class may be identified from records maintained by Itron or its transfer agent and
3
4  may be notified of the pendency of this action by mail, using the form of notice
5  similar to that customarily used in securities class actions.
6        33.    Plaintiff's claims are typical of the claims of the members of the Class
7  as all members of the Class are similarly affected by Defendants' wrongful
8  conduct in violation of federal law that is complained of herein.
9        34.    Plaintiff will fairly and adequately protect the interests of the
10 members of the Class and has retained counsel competent and experienced in class
11 and securities litigation.
12
13        35.    Common questions of law and fact exist as to all members of the
14 Class and predominate over any questions solely affecting individual members of
15 the Class.  Among the questions of law and fact common to the Class are:
16              (a)     Whether the federal securities laws were violated by
17 Defendants' acts as alleged herein;
18
19              (b)     Whether statements made by Defendants to the investing public
20 during the Class Period omitted and/or misrepresented material facts about the
21 business, operations, and prospects of Itron; and
22              (c)     To what extent the members of the Class have sustained
23 damages and the proper measure of damages.
24        36.    A class action is superior to all other available methods for the fair
25 and efficient adjudication of this controversy since joinder of all members is
26

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 35


1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

000700-00  427079 V1

1  impracticable.  Furthermore, as the damages suffered by individual Class members

2  may be relatively small, the expense and burden of individual litigation makes it

3  impossible for members of the Class to individually redress the wrongs done to

4  them.  There will be no difficulty in the management of this action as a class

5

6  action.

7  ## VII.   UNDISCLOSED ADVERSE FACTS

8      37.    The market for Itron's securities was open, well-developed and

9  efficient at all relevant times.  As a result of these materially false and/or

10  misleading statements, and/or failures to disclose, Itron's securities traded at

11  artificially inflated prices during the Class Period.  Plaintiff and other members of

12

13  the Class purchased or otherwise acquired Itron's securities relying upon the

14  integrity of the market price of the Company's securities and market information

15  relating to Itron, and have been damaged thereby.

16      38.    During the Class Period, Defendants materially misled the investing

17  public, thereby inflating the price of Itron's securities, by publicly issuing false

18  and/or misleading statements and/or omitting to disclose material facts necessary

19

20  to make Defendants' statements, as set forth herein, not false and/or misleading.

21  Said statements and omissions were materially false and/or misleading in that they

22  failed to disclose material adverse information and/or misrepresented the truth

23  about Itron's business, operations, and prospects as alleged herein.

24      39.    At all relevant times, the material misrepresentations and omissions

25  particularized in this Complaint directly or proximately caused or were a

26

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 36



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    substantial contributing cause of the damages sustained by Plaintiff and other

2    members of the Class.  As described herein, during the Class Period, Defendants

3    made or caused to be made a series of materially false and/or misleading

4    statements about Itron's financial well-being and prospects.  These material

5    misstatements and/or omissions had the cause and effect of creating in the market

6    an unrealistically positive assessment of the Company and its financial well-being

7    and prospects, thus causing the Company's securities to be overvalued and

8    artificially inflated at all relevant times.  Defendants' materially false and/or

9    misleading statements during the Class Period resulted in Plaintiff and other

10    members of the Class purchasing the Company's securities at artificially inflated

11    prices, thus causing the damages complained of herein.

12

13

## VIII.  LOSS CAUSATION

14    40.    Defendants' wrongful conduct, as alleged herein, directly and

15    proximately caused the economic loss suffered by Plaintiff and the Class.

16

17    41.    During the Class Period, Plaintiff and the Class purchased Itron's

18    securities at artificially inflated prices and were damaged thereby.  The price of the

19    Company's securities significantly declined when the misrepresentations made to

20    the market, and/or the information alleged herein to have been concealed from the

21

22    market, and/or the effects thereof, were revealed, causing investors' losses.

23

## IX.    SCIENTER ALLEGATIONS

24    42.    As alleged herein, Defendants acted with scienter in that Defendants

25    knew that the public documents and statements issued or disseminated in the name

26

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 37


1918 Eighth Avenue, Suite 3300 • Seattle, WA 98101
(206) 623-7292 • FAX (206) 623-0594

000700-00  427079 V1

of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Itron, his/her control over, and/or receipt and/or modification of Itron's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Itron, participated in the fraudulent scheme alleged herein.

## X.    APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

43.    The market for Itron's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Itron's securities traded at artificially inflated prices during the Class Period.  On April 29, 2010, the price of the Company's common stock reached a Class Period high of $81.15 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Itron's securities and market information relating to Itron, and have been damaged thereby.

44.    During the Class Period, the artificial inflation of Itron's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 38



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1   Class.  As described herein, during the Class Period, Defendants made or caused to

2   be made a series of materially false and/or misleading statements about Itron's

3   business, prospects, and operations.  These material misstatements and/or

4   omissions created an unrealistically positive assessment of Itron and its business,

5   operations, and prospects, thus causing the price of the Company's securities to be

6   artificially inflated at all relevant times, and when disclosed, negatively affected

7   the value of the Company stock.  Defendants' materially false and/or misleading

8   statements during the Class Period resulted in Plaintiff and other members of the

9   Class purchasing the Company's securities at such artificially inflated prices, and

10  each of them has been damaged as a result.

11          45.     At all relevant times, the market for Itron's securities was an efficient

12  market for the following reasons, among others:

13                  (a)     Itron stock met the requirements for listing, and was listed and

14  actively traded on the NASDAQ, a highly efficient and automated market;

15                  (b)     As a regulated issuer, Itron filed periodic public reports with the

16  SEC and the NASDAQ;

17                  (c)     Itron regularly communicated with public investors via

18  established market communication mechanisms, including through regular

19  dissemination of press releases on the national circuits of major newswire services

20  and through other wide-ranging public disclosures, such as communications with

21  the financial press and other similar reporting services; and

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 39



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

000700-00  427079 V1

1    (d)    Itron was followed by securities analysts employed by major

2  brokerage firms who wrote reports about the Company, and these reports were

3  distributed to the sales force and certain customers of their respective brokerage

4  firms.  Each of these reports was publicly available and entered the public

5  marketplace.

6    46.    As a result of the foregoing, the market for Itron's securities promptly

7  digested current information regarding Itron from all publicly available sources

8  and reflected such information in Itron's stock price.  Under these circumstances,

9  all purchasers of Itron's securities during the Class Period suffered similar injury

10  through their purchase of Itron's securities at artificially inflated prices and a

11  presumption of reliance applies.

## XI.    NO SAFE HARBOR

47.    The statutory safe harbor provided for forward-looking statements

under certain circumstances does not apply to any of the allegedly false statements

pleaded in this Complaint.  The statements alleged to be false and misleading

herein all relate to then-existing facts and conditions.  In addition, to the extent

certain of the statements alleged to be false may be characterized as forward

looking, they were not identified as "forward-looking statements" when made and

there were no meaningful cautionary statements identifying important factors that

could cause actual results to differ materially from those in the purportedly

forward-looking statements.  In the alternative, to the extent that the statutory safe

harbor is determined to apply to any forward-looking statements pleaded herein,

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 40



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Itron who knew that the statement was false when made.

## COUNT I

### VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT AND RULE 10B-5PROMULGATED THEREUNDER AGAINST ALL DEFENDANTS

48.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Itron's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

50.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 41



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

market prices for Itron's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

51.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Itron's financial well-being and prospects, as specified herein.

52.    These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Itron's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Itron and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

53.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 42



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

54.     The defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Itron's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 43



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1   deliberately refraining from taking those steps necessary to discover whether those

2   statements were false or misleading.

3       55.     As a result of the dissemination of the materially false and/or

4   misleading information and/or failure to disclose material facts, as set forth above,

5   the market price of Itron's securities was artificially inflated during the Class

6   Period.  In ignorance of the fact that market prices of the Company's securities

7   were artificially inflated, and relying directly or indirectly on the false and

8   misleading statements made by Defendants, or upon the integrity of the market in

9   which the securities trades, and/or in the absence of material adverse information

10  that was known to or recklessly disregarded by Defendants, but not disclosed in

11  public statements by Defendants during the Class Period, Plaintiff and the other

12  members of the Class acquired Itron's securities during the Class Period at

13  artificially high prices and were damaged thereby.

14      56.     At the time of said misrepresentations and/or omissions, Plaintiff and

15  other members of the Class were ignorant of their falsity, and believed them to be

16  true.  Had Plaintiff and the other members of the Class and the marketplace known

17  the truth regarding the problems that Itron was experiencing, which were not

18  disclosed by Defendants, Plaintiff and other members of the Class would not have

19  purchased or otherwise acquired their Itron securities, or, if they had acquired such

20  securities during the Class Period, they would not have done so at the artificially

21  inflated prices which they paid.

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 44



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

57.    By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

58.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

COUNT II

**VIOLATION OF SECTION 20(A) OF THE EXCHANGE ACT
AGAINST THE INDIVIDUAL DEFENDANTS**

59.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

60.    The Individual Defendants acted as controlling persons of Itron within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 45



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61.    In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

62.    As set forth above, Itron and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

    A.    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

    B.    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 46



C.    Awarding Plaintiff and the Class their reasonable costs and

expenses incurred in this action, including counsel fees and

expert fees; and

D.    Such other and further relief as the Court may deem just and

proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

DATED:  February 23, 2011.

HAGENS BERMAN SOBOL SHAPIRO

By

Steve W. Berman, WSBA #12536
Karl P. Barth, WSBA #22780
Tyler Weaver, WSBA #29413
1918 Eighth Avenue, Suite 3300
Seattle, Washington  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594

GLANCY BINKOW & GOLDBERG LLP
Lionel Z. Glancy
Michael Goldberg
Robert V. Prongay
1801 Avenue of the Stars, Suite 311
Los Angeles, California  90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 47

000700-00 427079 V1

1  LAW OFFICES OF HOWARD G. SMITH
Howard G. Smith
2  3070 Bristol Pike, Suite 112
3  Bensalem, Pennsylvania  19020
Telephone:  (215) 638-4847
4  Facsimile:   (215) 638-4867

5  *Attorneys for Plaintiff Bill Coady*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 48



**SWORN CERTIFICATION OF PLAINTIFF**

Itron, Inc., **SECURITIES LITIGATION**

I, Bill Coady, certify that:

1. I have reviewed the complaint and authorized its filing.

2. I did not purchase Itron, Inc., the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Itron, Inc. during the class period set forth in the Complaint are as follows:

I bought _84_ shares on _7_/_29_/_10_ at $_63.00_ per share.
I bought _92_ shares on _8_/_03_/_10_ at $_59.65_ per share.
I bought _____ shares on ___/___/___ at $_____ per share.
I bought _____ shares on ___/___/___ at $_____ per share.
I bought _____ shares on ___/___/___ at $_____ per share.

I sold _176_ shares on _2_/_17_/_11_ at $_56.65_ per share.
I sold _____ shares on ___/___/___ at $_____ per share.
I sold _____ shares on ___/___/___ at $_____ per share.
I sold _____ shares on ___/___/___ at $_____ per share.
I sold _____ shares on ___/___/___ at $_____ per share.

(List Additional Transactions on a Separate Page if Necessary)

5. I have not served as a representative party on behalf of a class under this title during the last three years except as stated:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

_____ ☐ Check here if you are a current employee or former employee of the defendant Company.

I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: _2-21-11_                    _Bill Coady_

49